# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2014

Lyle W. Cayce
Clerk

No. 13-30240

STATE OF LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS,

Plaintiff – Appellant

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, in her official capacity,

Defendants – Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:11-CV-76

Before JONES, WIENER, and GRAVES, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

At issue in this appeal is whether the State of Louisiana, through its Department of Health and Hospitals, must repay the federal government nearly $240 million that it received in Medicaid funds for charity care at nine public hospitals from 1996-2006. The state challenges an adverse decision of the Departmental Appeals Board ("The Board") of the United States Department of Health and Human Services ("HHS") and thus faces the narrow

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-30240

scope of review afforded by the Administrative Procedure Act. We may only reverse the agency decision if it was arbitrary and capricious, not in accord with law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A),(E); *Cedar Lake Nursing Home v. U.S. Dep't. of Health and Human Servs.,* 619 F.3d 453, 456 (5th Cir. 2010). The State reiterates the arguments that the Board and the district court rebuffed. Finding no reversible error of fact or law, we affirm the district court judgment for essentially the same reasons.

To do so, it is unnecessary fully to recount the complex Medicaid reimbursement standards or several years of procedural jockeying that preceded the Board's ruling against the State. Instead, we frame the basic issues and add a few comments concerning Louisiana's principal arguments.

## BACKGROUND

Centers for Medicare and Medicaid Services' ("CMS") audits revealed that over a decade, nine Louisiana public hospitals received hundreds of millions of dollars in excess payments over their uncompensated costs ("UCC") of caring for low-income patients. The State made payments from federal funding under a series of Medicaid plans that were pre-approved by CMS. The plans paid each hospital's interim estimated UCC costs quarterly in advance, with a full accounting and settlement (reflecting the actual costs incurred) to occur at the end of the year. From 1995-97, the plan provided that "[i]f at audit or final settlement . . . the actual uncompensated costs are determined to be less than the estimated uncompensated costs, appropriate action shall be taken to recover such overpayment." (Louisiana concedes that this provision required it to repay excess amounts for those years.) From 1997-2003, however, an amended plan deleted this explicit reimbursement duty, but the plan provided that "[relevant] payments to a hospital . . . shall not exceed the hospital's net uncompensated cost . . . for the state fiscal year to which the payment is applicable." Further, the payment system is deemed to be

2

"retrospective," in accord with the procedure outlined in the prior plan. The only reference to recoupment of overpayments from providers was modified to state that, "[a]ppropriate action shall be taken to recover any overpayments resulting from the use of erroneous data, or if it is determined upon audit that a hospital did not qualify." Finally, from 2003-05, the plan remained like the 1997-2003 plan and continued to state that "[f]inal payment will be based on the uncompensated cost data per the audited cost report for the period(s) covering the state fiscal year."[1]

Although the Medicaid statute generally states that a hospital may not receive more than its actual UCC in payments for low-income patient care, 42 U.S.C. § 1396r-4(g)(1)(A), and requires overpayments to states to be reimbursed to the federal government, 42 U.S.C.§ 1396b(d)(2)(C), neither the Board nor the district court relied on these provisions to uphold Louisiana's reimbursement obligation. Instead, the Board, whose decision we review, relied on the plain language of Louisiana's "retrospective" plans and decided that compliance with the plans required Louisiana to account for and recoup excess UCC payments at the end of each fiscal year.

Louisiana's challenge to the administrative decision focuses on two arguments. First, the State contends that its plans distinguished "retrospective" payment from "recoupment," and after 1997, the plans expressly did not require recoupment of overpaid UCC from the hospitals and reimbursement to the federal government. Second, the State's removal of a recoupment provision from the later plans means that the State was no longer obliged to seek recoupment. We discuss each of these.

---

[1] Louisiana did not furnish a separate plan for 2005-06 but the parties treat it like these predecessor plans.

No. 13-30240

## 1. Retrospective payments versus recoupment.

Louisiana argues that the Board failed to distinguish the State's payment system from a (federally non-existent) duty to recoup overpayments at the end of the year from hospitals that, according to audits, were overcompensated for their UCC.   According to the State, a proper interpretation of its post-1997 plans is that while the State could seek further reimbursement for the public hospitals whose UCC had been underpaid by the federal government, there was no provision for recoupment of overpayments. In other words, the State lays claim to an asymmetrical retrospective payment system and further aspires to bind HHS to that system because States have "flexibility" in designing their Medicaid plans, and the Board ordinarily defers to a State's reasonable interpretation of its own plan.   We do not find the Board's rejection of this position arbitrary and capricious or not in accord with law.

Noting that the 1997-2003 plan itself describes the payment system for public hospitals as "retrospective," rather than "prospective," the Board explained that its decisions have long recognized that "retrospective" is a term of art in healthcare reimbursement.  In a retrospective system, a state makes payments to a provider based on estimates of the UCC for the upcoming year. At the end of the year, the provider submits a report of the actual costs incurred, which is subject to audit and potential appeal.  Interim payments are then reconciled to actual costs and final payment is made, aligning the payments with the actual costs.  In contrast, payments made in a "prospective system" are not adjusted based on actual costs incurred during the year. *Compare Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139, 142 n.2 (D.C. Cir. 1986) (explaining prospective payment system as "not based on a hospital's actual costs . . . and not subject to retroactive adjustment"), *with Massachusetts v. Sec'y of Health & Human Servs.*, 749 F.2d 89, 90-91 (1st Cir. 1984)

No. 13-30240

(describing a state Medicaid "retrospective rate-setting" in which a state sets an "interim rate" and "advances to the provider an interim amount" which is recovered or offset at the end of the period to match actual costs, as determined from subsequent reports and audits). The Board also maintained that "federal law has always required states to reimburse hospitals according to the methodology in the approved Medicaid state plan, and, with very limited exceptions that do not apply here, requires states to return the federal share of any payments to hospitals in excess of the amount determined according to the state plan."[2]

The Board interpreted Louisiana's plans according to their precise terms and held them to be "retrospective" and therefore to require an annual reconciliation of payments to actual costs incurred by the hospitals and a return of excess payments. We need not "defer" to the Board's interpretation of the Louisiana law to conclude that it correctly reads the plans. That Louisiana advocates its ability to "recoup" additional funds from the federal government in case of UCC underpayments demonstrates how retrospective reconciliation works in its plans, and there is no textual basis in the plans for the State's asymmetrical interpretation. The Board's decision in this respect was neither arbitrary and capricious nor contrary to law.

---

[2] We do not discuss the impact of a federal provision enacted in 2003 and much later regulations that deal specifically with reimbursement of the federal government for excess UCC, as those measures post-date the events here.

No. 13-30240

## 2. Removal and revision of the recoupment provision.

Louisiana removed the express recoupment provision from its plans after 1997 and replaced it with a provision stating that, "Appropriate action shall be taken to recover any overpayments resulting from the use of erroneous data, or if it is determined upon audit that a hospital did not qualify." According to the State, this change demonstrated its intent only to seek recoupment for overpayments other than UCC from the public hospitals. The State asserts that by eliminating recoupment of UCC overpayments, the State promoted administrative efficiency and limited disruption to the hospitals that serve principally needy families, "especially . . . where Louisiana expected its forecasts of UCC to avoid significant overstatement, such that recoupments would serve little purpose." Consequently, the Board erred by rejecting its interpretation.[3]

The Board responded to the State's argument in several ways. First, the Board noted that to the extent the revision refers to "erroneous data," it is generally applicable to all hospitals in Louisiana, including private hospitals that operate on a prospective payment system as well as the public hospitals that receive compensation on a retrospective system. Second, the absence of a specific recoupment provision does not alter the plan's general methodology from that of a retrospective payment system, which by its nature and terms relies on an end-of-year accounting and reconciliation process. Further, the Board questioned "whether a State plan provision specifically permitting recovery from a provider is a necessary prerequisite for recovery of an amount in excess of what the State plan allows as reimbursement for Medicaid services." Where "a state has effectively overpaid itself, adjustment of the

---

[3] If the State so carefully adjusted its forecasts to avoid significant overstatement of UCC, how did it amass $240 million in overpayments in ten years?

federal share is more important than the specific source of state funds used to make the adjustment." In other words, where a state has overpaid Medicaid funds to the public hospitals for UCC, whether and how a state recovers the overpayments from public hospitals does not affect whether the state must return the overpaid federal share. Even if we were to disagree with the Board's conclusion that the removal of the recoupment provision was "inadvertent," the other reasons for the Board's decision are compelling and render its decision neither arbitrary and capricious nor contrary to law.

Further supporting the Board's position is that other circuit courts uniformly uphold states' obligations to return the federal share of Medicaid overpayments before the state recovers the overpayment amount from individual provider hospitals. *Dep't. of Soc. Servs., Div. of Family Servs. v. Bowen*, 804 F.2d 1035, 1040 (8th Cir. 1986); *Perales v. Heckler*, 762 F.2d 226, 227 (2d Cir. 1985); *Massachusetts v. Sec'y of Health & Human Servs.*, *supra* at 90, 95. That these decisions did not deal with UCC overpayments is irrelevant, as all relied on 42 U.S.C. § 1396b(d)(2)(C), the generally applicable Medicaid payment adjustment provision.

For the foregoing reasons, the district court judgment, affirming the Board's decision against Louisiana, is **AFFIRMED**.

7